UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LAVERNE CARR,

                    Plaintiff,

          -against-                                                    15-cv-6663 (LAK)

CREDIT ONE BANK,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Craig Thor Kimmel
> KIMMEL & SILVERMAN, P.C.
> *Attorneys for Plaintiff*

> Aaron R. Easley
> SESSIONS FISHMAN NATHAN & ISRAEL, LLC
> *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge*.

   This is an action for damages and other relief under the Telephone Consumer Protection Act (the "TCPA") arising out of telephone calls allegedly placed to plaintiff when she failed to make payments on a credit card. Defendant Credit One Bank ("Credit One") moves to compel arbitration and to dismiss or, alternatively, stay this case pending arbitration.

2

*Facts*

In February 2014, plaintiff, in response to a written solicitation from defendant, applied online for a Credit One Visa credit card.[1]   The solicitation noted that the terms and conditions applicable to the credit card were subject to an arbitration agreement, the full version of which would be mailed to the plaintiff with the credit card.[2]  Plaintiff later received a credit card in the mail, along with a copy of the "Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement" (the "Cardholder Agreement").[3]  The arbitration clause, located on page 6 of the Cardholder Agreement, is preceded by this statement, printed in bold text and capital letters:[4]

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.   IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY.   ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.  IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

---

[1]   Aff. Of Gary Hardwood [DI 11-1] at ¶ 9.

[2]   DI 11-2 at 3.

[3]   DI 11-1 at ¶¶ 10-11; DI 11-3.

[4]   DI 11-3 at 6.

3

The arbitration clause itself is quite broad, encompassing "any controversy or dispute between [plaintiff] and [defendant]" and any matter "relating to [plaintiff's] account.[5]  The clause states that it is "governed by, and enforceable under, the Federal Arbitration Act (the 'FAA'), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement."[6]

After receiving the card in the mail, plaintiff activated the card by telephone, and proceeded to make charges to the card as well as some payments on the account.[7]

When plaintiff fell behind on her credit card payments,[8] Credit One allegedly began contacting her about her delinquent account.  Plaintiff alleges that Credit One, in violation of the TCPA,[9] used an automatic telephone dialing system to call her repeatedly on her cellular phone, which incurs a charge for incoming calls.[10]

Credit One now moves to compel arbitration of plaintiff's claims and to dismiss or stay the action pending arbitration.[11]  Plaintiff raises three arguments in opposition: (1) plaintiff

---

[5]     *Id.*

[6]     *Id.*

[7]     DI 11-1 at ¶ 13; *see* DI 11-4.

[8]     *See* DI 11-4.

[9]     47 U.S.C. § 227.

[10]    Am. Compl. [DI 4].

[11]    DI 10.

4

never "knowingly agreed to" the arbitration clause, (2) the arbitration clause is unconscionable and therefore unenforceable, and (3) the TCPA claim is beyond the scope of the arbitration clause.[12]

*Discussion*

Plaintiff's first argument is dead in the water.  She contends – as far as the Court can discern from her brief – that (i) the initial solicitation contained no information about arbitration, (ii) the defendant has presented no evidence that plaintiff ever signed the initial solicitation or any other contract agreeing to arbitrate, and (iii) the defendant has not shown that plaintiff "knew of . . . and agreed to" the arbitration clause in the Cardholder Agreement.[13]

The first argument is disingenuous.  Contrary to plaintiff's assertion, the initial solicitation did state that the agreement was subject to an arbitration clause.[14]

Plaintiff's second contention fares no better.  As this Court has explained, "[t]he absence of the signature of a contracting party is not necessarily inconsistent with the formation of a binding contract.  A contract arises as long as the terms are understood by the parties and each manifests its intent to be bound even in the absence of one or more signatures."[15]

---

[12]   Pl.'s Opp. Br [DI 12-1].

[13]   *Id.* at 5-8.

[14]   DI 11-2 at 3 ("**ARBITRATION AGREEMENT:** You and we agree that either you or we may, without the other's consent, require that any dispute between you and us be submitted to mandatory, binding arbitration.  A more detailed description of this Arbitration Agreement will be sent with your card.").

[15]   *Aini v. Sun Taiyang Co., Ltd.*, 964 F. Supp. 762, 775 (S.D.N.Y. 1997) (collecting cases), *aff'd sub nom.*, *Topiclear Beauty v. Sun Taiyang Co., Ltd.*, 159 F.3d 1348 (2d Cir. 1998) (summary order).

5

Here, after responding to the initial solicitation, plaintiff received a credit card in the mail along with the Cardholder Agreement.  The first paragraph of the Cardholder Agreement states: "By requesting and receiving, signing or using your Card, you agree as follows . . . ."[16]  Plaintiff repeatedly used the card and made payments on the account.  Under New York law,[17] the acceptance and use of a credit card demonstrates acceptance of the conditions in a Cardholder Agreement.[18]  Thus, even if plaintiff never signed an agreement, her use of the credit card and payment on the account manifested her intent to be bound by the Cardholder Agreement.

Third, plaintiff's suggestion that she cannot be bound by terms that she did not read or understand fails for the simple reason that one "who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them."[19]

Plaintiff next argues that the arbitration clause in the Cardholder Agreement is procedurally unconscionable because (i) it "is buried on the penultimate page of an adhesive [*sic*] contract full of convoluted legal terms in tiny print that requires Plaintiff to waive both statutory and

---

16

DI 11-3 at 2.

Directly under this phrase, the words "**IMPORTANT NOTICE**" direct the reader to the full arbitration clause on page 6 of the agreement.  *Id.*

17

Defendant argues, and plaintiff does not dispute, that New York State law applies to the issues of contract formation and unconscionability.  *See* DI 12-1 at 7, 9; Def.'s Reply Br. [DI 13] at 3.

18

*See Salerno v. Credit One Bank, NA*, No. 15-cv-516 (JTC), 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2015) (collecting cases).

19

*Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920); *accord I.C. ex rel. Solovsky v. Delta Galil USA*, — F. Supp. 3d —, 2015 WL 5724812, at *6 (S.D.N.Y. Sept. 29, 2015).

6

constitutional rights," (ii) "Plaintiff has no choice but to accept the arbitration clause should she want the agreement to be in effect," and (iii) the parties were of unequal bargaining power.[20]

Under New York law, "'[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made— i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'"[21]

This arbitration clause was clear, conspicuous, and preceded by a heading written in all capital letters and bold print.  It may be that the plaintiff had "no choice but to accept the arbitration clause" if she wanted this credit card, but that would not help her.  If acceptance of unwanted vendor terms rendered a contract unconscionable, then any contract containing a provision that a counterparty insisted upon would be unconscionable and unenforceable.  As Judge Koeltl has explained, the fact that a "Cardmember Agreement is a printed form and is offered on a take-it-or-leave-it basis . . . is insufficient to render the contract unconscionable, particularly when the plaintiff had the ability to go to other sources of credit."[22]  Further, "arbitration agreements are enforceable despite an inequality in bargaining power" unless "coupled with high pressure tactics that coerce" agreement.[23]  Here, there is no indication that plaintiff was coerced into activating and using this

---

[20]     DI 12-1 at 9-10.

[21]     *Anonymous v. JP Morgan & Chase Co.*, No. 05-cv-2442 (JGK), 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)).

[22]     *Id.*

[23]     *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 572 (S.D.N.Y. 2009) (quotation marks and alteration omitted).

7

credit card.   Finally, although plaintiff does not argue that the contract was substantively unconscionable – a fact that independently dooms this argument – the Court notes that the arbitration clause does not foreclose plaintiff's TCPA claims, is enforceable by either party, permits appeals, and has been enforced by federal district courts around the country.[24]   Accordingly, plaintiff's unconscionability argument is rejected.

Plaintiff's final argument is that the TCPA claim is outside the scope of the arbitration clause.[25]   The parties do not appear to have considered whether this is a question for the Court or for an arbitrator, although plaintiff argues implicitly that it is a question for the Court.   The answer to this question, however, ultimately is inconsequential, as plaintiff's argument would be rejected in either case.   If questions concerning the scope of the arbitration clause are for the arbitrator to decide, then plaintiff's argument is not properly before this Court.   If, however, the argument properly were for this Court, then the Court considers it mindful of the Second Circuit's guidance that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and that, under the FAA, "arbitration is indicated unless is can be said with positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute."[26]   Here, the Court cannot say with positive assurance that plaintiff's TCPA claims arising out of defendant's phone calls to plaintiff concerning her credit card account are beyond the scope of the arbitration clause, which encompasses "any controversy or dispute between [plaintiff] and

---

[24]

*E.g.*, *Salerno*, 2015 WL 6554977, at *6; *Ellin v. Credit One Bank*, No. 15-cv-2694 (FLW), 2015 WL 7069660, at *3-4 (D.N.J. Nov. 13, 2015); *see also* DI 13 at 5 (collecting cases).

[25]

DI 12-1 at 11-15.

[26]

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (quotation marks omitted).

[defendant]" and any matter "relating to [plaintiff's] account." Indeed, several other district courts have held that TCPA claims are within the scope of the same arbitration clause in the same contract.[27]

The Court is mindful of the issues surrounding arbitration clauses inserted into form contracts in consumer transactions by powerful economic enterprises.[28] Just two days ago, Justice Ginsburg explained in her dissent in *DIRECTV, Inc. v. Imburgia* that "[b]ecause consumers lack bargaining power to change the terms of consumer adhesion contracts *ex ante*, the providers have won the power to impose a mandatory, no-opt-out system in their own private 'courts' designed to preclude aggregate litigation."[29] Indeed, earlier this year Senator Al Franken and Representative

---

[27]

    *E.g.*, *Ellin*, 2015 WL 7069660, at *4; *Salerno*, 2015 WL 6554977, at *5.

[28]

    *See, e.g.*, Jessica Silver-Greenberg & Robert Gebeloff, *Beware the Fine Print, Part I - Arbitration Everywhere, Stacking the Deck of Justice*, N.Y. TIMES, Oct. 31, 2015, http://www.nytimes.com/2015/11/01/business/dealbook/arbitration-everywhere-stacking -the-deck-of-justice.html ("By inserting individual arbitration clauses into a soaring number of consumer and employment contracts, companies like American Express devised a way to circumvent the courts and bar people from joining together in class-action lawsuits, realistically the only tool citizens have to fight illegal or deceitful business practices."); Jessica Silver-Greenberg & Michael Corkery, *Beware the Fine Print, Part II - In Arbitration, a "Privatization of the Justice System,"* N.Y. TIMES, Nov. 1, 2015, http://www.nytimes.com/2015/11/02/business/dealbook/in-arbitration-a-privatization-of-the-justice-system.html ("Over the last 10 years, thousands of businesses across the country - from big corporations to storefront shops - have used arbitration to create an alternate system of justice. There, rules tend to favor businesses, and judges and juries have been replaced by arbitrators who commonly consider the companies their clients."); Judith Resnick, *Diffusing Disputes: The Public in the Private of Arbitration, the Private in Courts, and the Erasure of Rights*, 124 YALE L.J. 2804, 2804 (2015) ("Although hundreds of millions of consumers and employees are obliged to use arbitration as their remedy, almost none do so – rendering arbitration not a vindication but an unconstitutional evisceration of statutory and common law rights.").

[29]

    No. 14-462, 2015 WL 8546242, at *14 (U.S. Dec. 14, 2015) (Ginsburg, J., dissenting) (alterations and some quotation marks omitted); *see also id.* ("The proliferation of take-it-or-leave-it agreements mandating arbitration and banning class procedures, and this Court's readiness to enforce such one-sided agreements, have disabled consumers from

9

Hank Johnson introduced the Arbitration Fairness Act of 2015 which, if enacted, would amend the FAA to prohibit parties from entering pre-dispute agreements to arbitrate employment, consumer, antitrust, or civil rights disputes.[30]  In the last analysis, however, this Court is obliged to apply the law unless and until it is changed by a higher authority.

*Conclusion*

Accordingly, Credit One's motion [DI 10] is granted to the extent that plaintiff is ordered to pursue her claims in arbitration according to the terms of the arbitration clause in the Cardholder Agreement, and this action is stayed pending the outcome of that arbitration.

SO ORDERED.

Dated:        December 16, 2015

_____
Lewis A. Kaplan
United States District Judge

---

shopping to avoid arbitration mandates.) (quotation marks and alteration omitted); *see generally id.*, at *14-16.

[30]   S. 1133, 114th Cong. (2015); H.R. 2087, 114th Cong. (2015).